

participation in the assignment program, HUD can be ordered to consider a repayment program, and HUD's bankruptcy claims can be limited to those that the agency's Handbooks countenance and that bankruptcy law permits. Hence, plaintiff has stated claims against HUD upon which relief can be granted.

## IV. CONCLUSION

HUD's motions to dismiss for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim upon which relief can be granted will be denied.

Edward J. DiDonato, Michael L. Temin, Wolf, Block Schorr Solis–Cohen, James W. Adelman, Morris & Adelman, Rosetta B. Packer, Kelehr Harrison, James O'Connell, Asst. U.S. Trustee, Philadelphia, Pa., for appellees.

Mary Walrath, Clark Ladner Fortenbaugh Young, Philadelphia, Pa., for appellant Communicraft.

**In re CITY WIDE PRESS, INC.**

**Civ. A. No. 89–6228.**

United States District Court, E.D. Pennsylvania.

Feb. 13, 1990.

## ORDER–MEMORANDUM

LUDWIG, District Judge.

AND NOW, this 13th day of February, 1990 the order of the bankruptcy court entered July 21, 1989 is affirmed. 102 B.R. 431.

Jurisdiction is 28 U.S.C. § 158(a). Review of legal conclusions is plenary. The clearly erroneous standard applies to findings of fact. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

On September 27, 1988 an involuntary bankruptcy petition under chapter seven was filed against City Wide Press, a commercial printer. Debtor filed a voluntary chapter 11 petition October 13, 1988, and the cases were consolidated.

Thereafter, appellant Communicraft, also a commercial printer, entered into a stipulation with debtor and secured creditor Fidelity Bank enabling it to complete debtor's government contracts in return for a senior secured interest in future accounts receivable. On November 10, 1988 this stipulation was approved by the bankruptcy judge, *see* 11 U.S.C. § 364(d), with an order authorizing the parties to enter into a "Services

Agreement" effective "only for a period of sixty (60) days from the date of this Stipulation...." Although there were two drafts prepared and a consensus existed as to most of its terms, no services agreement was executed. Communicraft worked on debtor's contracts until February 10, 1989, when it was ordered by debtor to leave the plant. The bankruptcy judge accepted the report of an accountant that after January 10, 1989 Communicraft incurred costs of $292,383. Op. 11.[1]

Under the bankruptcy code, 11 U.S.C. § 364(d), a senior or equal lien on property of the bankrupt estate may be obtained under certain conditions. Because this power is extraordinary, due process consisting of notice, hearing and court authorization is required. 2 *Collier on Bankruptcy* ¶ 364.05 (15th ed. 1989).

A bankruptcy judge also appears to have discretionary power to authorize a senior claim under § 364(d) *nunc pro tunc*. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir.1986) (bankruptcy judge may retrospectively approve employment of professionals). But an after-the-fact order should be limited to *"extraordinary circumstances." F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988) (emphasis in original) (reversing affirmance by district court of bankruptcy judge's *nunc pro tunc* approval of professional employment under 11 U.S.C. § 327(a)). *See also In re Massetti*, 95 B.R. 360, 364 (Bankr.E.D.Pa.1989) (bankruptcy judge declined such approval of claim under 11 U.S.C. § 364(b)).

Here, after notice and hearing, the bankruptcy judge authorized a senior secured interest covering Communicraft's costs for a 60–day period under a proposed services agreement. No other authoriza-

tion was sought, and no agreement was consummated. Subsequently, the bankruptcy judge carefully reviewed factors relevant to a *nunc pro tunc* authorization, including whether the authorization would have been granted if timely requested, whether creditors had been harmed by the unauthorized expenditures, and whether the parties believed an authorization had been given. *See In re American Cooler Co.*, 125 F.2d 496 (2d Cir.1942). The bankruptcy judge looked for a " 'compelling' [reason] in the nature of equities and absence of prejudice" to grant the belated authorization. Op. 13. The lack of a signed writing or an agreed understanding was a basic difficulty in appellant's position. Op. 18. After reviewing these factors in detail, the bankruptcy court declined to grant the *nunc pro tunc* relief requested. Under the law and the facts, there was no error in that decision. Appellant's arguments based on § 506(c) and on the doctrine of constructive trust are also rejected.

Appellant argues that the automatic bankruptcy stay expired either March 31, 1989 or June 16, 1989 because the bankruptcy judge had not ruled on its motion.[2] However, a party may waive timeliness objections if it "takes some action which is inherently inconsistent with adherence to the time constraints of section 362(e) and Bankruptcy Rule 4001(a)(2)." *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 698 (3d Cir.1989) (*dicta*) (stay terminated when court did not act on creditor's motion within prescribed time period).

Here, the bankruptcy judge considered the history of appellant's motion, including the repeated continuance agreements, attempts to resolve the dispute amicably, and

---

1. As a consequence of this factual determination, even if Communicraft did have a secured interest in the amount of costs incurred between November 10, 1988 and January 10, 1989 that interest was fully satisfied. At most, Communicraft incurred total costs of $464,201.75 between November 10, 1988 and January 10, 1989. Communicraft received payments of $509,730.01. Op. 7. These determinations in-

volved credibility and were not clearly erroneous.

2. Appellant does not specify how that eventuality would have affected its rights in this case. Appellee argues that, even if the stay expired, appellant had no secured claim to pursue. *See* note 1, *supra*.

detailed post-hearing submissions.[3] In these circumstances, the bankruptcy judge's determination that the automatic stay remained in effect was not improper.

**3.** On February 16, 1989 appellant filed a motion to lift the automatic stay and to sequester funds held by the trustee. A hearing was held March 1, 1989 and continued by agreement four times until May 17, 1989. Appellant requested a decision. When the bankruptcy judge declined, appellant reluctantly agreed to another continuance until June 21, 1989. T. 68–80 May 17, 1989. The bankruptcy judge requested briefing. Following the slip opinion in *Wedgewood*, the bankruptcy judge notified appellant's counsel that, at her option, he would rule at the hearing or she could submit a supplemental brief, with a decision due 30 days thereafter. Appellant chose the latter and, on July 14, 1989, filed a seven-page legal memorandum and 17 pages of proposed findings and conclusions. On July 21, 1989 the bankruptcy judge denied appellant's motion.